UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANK SACO,<br>    Plaintiff. | )<br>)<br>)<br>) |
| v. | )   CIVIL ACTION NO.<br>)   03-12551-MBB<br>) |
| TUG TUCANA CORPORATION,<br>    Defendant. | )<br>) |

**PLAINTIFF'S MOTION TO INCREASE MAINTENANCE AND CURE
AND REQUEST FOR EXPEDITED HEARING BY THE COURT**

The plaintiff hereby moves this Court to increase his claim for maintenance and cure and for an expedited hearing on that claim. As grounds for this motion Plaintiff states the following:

**FACTS**

On April 13, 2003, the plaintiff, Frank Saco, was serving as a member of the crew of the defendant's vessel, the TUG TUCANA. See Affidavit of Frank Saco, attached as Exhibit A. While the TUG TUCANA was in navigable waters and while the plaintiff was in the exercise of due care and in the performance of his duties, he sustained severe and painful personal injuries. See id. The plaintiff suffered injuries to his right foot including a Lis Franc dislocation. See id.

As a result of the accident, the plaintiff has been unable to work and has required surgery and physical therapy, resulting in numerous and expensive medical bills. See id. As is their duty, the defendant began maintenance payments to the plaintiff at a rate of $420.00 per month. See id. This is an insufficient and unreasonable amount for the basic subsistence and shelter of the plaintiff.

At the time of the happening of this incident, the plaintiff was in the employ of the

defendant as a seaman and member of the crew of the TUG TUCANA which was in navigable waters and he was in the exercise of due care and in the service of the vessel and subject to the call to duty.

Based upon these facts and the reasons stated below, the plaintiff moves this court to increase the maintenance payments to $65.45 per day.

**ARGUMENT**

As to the obligation of the shipowner to pay maintenance and cure, the United States Supreme Court made the duty very clear in the case of Aguilar vs. Standard Oil Co. of New Jersey.

> Among the most pervasive incidents of the responsibility anciently imposed upon a shipowner for the health and security of sailors was liability for the maintenance and cure of seamen becoming ill or injured during the period of their service.[1]  In the United States this obligation has been recognized consistently as an implied provision in contracts of marine employment.[2]  Created thus with the contract of employment, the liability, unlike that for indemnity or that later created by the Jones Act,[3] in no sense is predicated on the fault or negligence of the shipowner. Whether by traditional standards he is or is not responsible for the injury or sickness, he is liable for the expense of curing it as an incident of the marine employer-employee relationship.[4]  So broad is the shipowner's obligation, that negligence or acts short of culpable misconduct on the seaman's part will not relieve him of the responsibility.  Peterson v. The Chandos, 4 F. 645 (D. C.); see also The J. F. Card, 43 F. 92 (D.C.); The Ben Flint, 1 Abb. (U.S.) 126, 3 Fed. Cas. No. 1299 (D.C.).  Conceptions of contributory negligence, the fellow-servant doctrine, and assumption of risk have no place in the liability or defense against it. Only some willful misbehavior or deliberate act of indiscretion suffices to deprive

---

[1] See e.g., Laws of Oleron, Articles VI, VII, reprinted in 30 F. 1171, 1174 (1897)

[2] Harden v. Gordon, 2 Mason 541, 11 Fed. Cas. No. 6047 (C.C.); Cortes v. Baltimore Insular Line, 287 U.S. 367, 371

[3] The Osceola, 189 U.S. 158; Pacific S. S. Co. v. Peterson, 278 U.S. 130.

[4] The City of Alexandria, 17 F. 390 (D.C.); The A. Heaton, 43 F. 592 (C. C.); Sorenson v. Alaska S.S. Co., 247 F. 294 (C.C.A.); Seely v. City of New York, 24 F. 2d 412 (C.C.A.);

the seaman of this protection. The Ben Flint, supra.

318 U.S. 724, 730 (1943)

In addition, the Aguilar Court noted that the ship owner owes the duty of maintenance and cure:

> [R]egardless of whether he is at fault; the seaman's fault, unless gross, cannot defeat it; unlike the statutory liability of employers on land it is not limited to strictly occupational hazards or to injuries which have an immediate causal connection with an act of labor. An obligation which thus originated and was shaped in response to the needs of seamen for protection from the hazards and peculiarities of marine employment should not be narrowed to exclude from its scope characteristic and essential elements of that work.

Id. at 734.

As to the appropriate amount to be paid as maintenance, there was no service contract or collective bargaining agreement to set or otherwise restrict the amount to be paid. Therefore, the newest decisions clearly reject the old fashioned concepts which determined maintenance "as the value of the food and lodging aboard the vessel" in favor of the more sensible approach, that the ship owners must pay for the actual expenses of the seaman's food and lodging up to the reasonable amount for their locality. Hall v. Noble Drilling (U.S.) Inc., 22 F.3$^d$ 582 (5th Cir. 2001).

The Hall Court, and subsequent decisions, clearly define the standard for determining a reasonable maintenance amount. In Hall, the court allowed that the "seaman is entitled to a reasonable cost of food and lodging, provided he has incurred the expense." See id. at 587. In order to prove this reasonable expense, the seaman is allowed to offer proof of actual expenses and proof of actual costs of living in the area. See id. "The burden of producing evidence of expenses is 'feather light,' and a court may award reasonable expenses, even if the precise amount of actual expenses is not conclusively proved." See id. at 588.

A seaman is entitled to produce evidence of and be paid maintenance for such things as actual and full mortgage or rent paid (not the prorated amount based on occupants), food, utilities, and transportation to and from medical and therapy appointments. See id. at 585.

**THE PLAINTIFF'S EXPENSES**:

According to the evidence in this case and the affidavit of the plaintiff, attached hereto as Exhibit "A", he has incurred the following expenses:

| EXPENSE | AMOUNT |
|---|---|
| RENT | $962.00 per month |
| UTILITIES (gas and electric) | $5.00 per day |
| FOOD | $100.00 per week |
| GAS (auto to and from therapy) | $30.00 per week |
| Auto Insurance | $1,202.00 per year |

See attachment A, B, and C.

Based upon the above numbers, the plaintiff incurs expenses of $32.07 per day on rent, $5.00 per day on utilities (Canceled checks attached as Exhibit B), $13.30 per day on food and necessities, $4.28 per day on gas for therapy, and $3.29 per day on auto insurance so that he may drive his car to therapy (Canceled checks attached as Exhibit B). This equals $57.94 per day. The defendant paid a rate of $15.00 per day during this period therefore, a remaining rate of $42.94 from April 13, 2003 to January 30, 2006 is owed to the plaintiff.

**Total Maintenance Expenses at $42.94 per day (April 13, 2003 to January 30, 2006)**

$43,927.00

Based upon the above numbers, the plaintiff continued to incur expenses of $32.07 per day on rent, $5.00 per day on utilities (Canceled checks attached as Exhibit B) and $13.30 per day on food and necessities from February 1, 2006 until August 4, 2006. This equals $50.37 per day. The defendant paid or should have paid a rate of $15.00 per day during this period therefore; a remaining rate of $35.37 from April 13, 2003 to January 30, 2006 is owed to the

4

plaintiff.

**Total Maintenance Expenses at $35.37 per day (February 1, 2006 to July 20, 2006)**

$ 10,363.00

TOTAL            $54,290.00

In addition to his actual expenses, the plaintiff also submits evidence of a Home Health Aide bill of $3930.00 (Bills attached as Exhibit C). During his period of convalescence, the plaintiff used the services of a Home Health Aide for help with daily living.

The plaintiff contends that his rental amount, $962.00 per month, is reasonable for Manchester and for Massachusetts in general. Lastly, based upon the court's findings in Hall, the plaintiff's actual expenses are reasonable. Each of his expenditures are within the ranges of those propounded by the plaintiffs in Hall and accepted by the court. See Hall, 22 F.3$^d$ at 586-88. His rental, food, utility, and transport costs are merely magnified by the more expensive cost of living in the northeast United States. The defendant's current maintenance rate of $15.00 per day is not supported by case law or extrinsic evidence.

As propounded in Hall, the plaintiff's burden in producing his actual costs of food and lodging and the reasonable cost of food and lodging in his locale is "**feather light**." The plaintiff's affidavit, associated bills, and the reasonable cost analysis provided clearly and easily meet this "**feather light**" standard resulting in the plaintiff's right to and the defendant's duty to pay the required maintenance.

**WHEREFORE**, the plaintiff requests that this Court enter the following order:

1. That the defendant has failed to meet its obligation of paying maintenance to the plaintiff from April 3, 2003, until January 30, 2006, for 1023 days at the rate of $57.94 per day or

5

   $59,272.00 and from February 1, 2006, until August 4, 2006, for 185 days at a rate of

   $50.37 per day or $9318.00 and continuing.

2. That the defendant is responsible to pay the past, present and future medical bills incurred

   by the plaintiff for treatment of his injuries.


Respectfully submitted,
by his attorney,


/s/ David B. Kaplan
DAVID B. KAPLAN, BBO NO. 258540
**THE KAPLAN/BOND GROUP**
88 Black Falcon Avenue, Suite 301
Boston, MA 02210
(617) 261-0080


Dated: August 9, 2006