UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 03-12551-MBB

FRANK SACO,
                    Plaintiff,

VS.

TUG TUCANA and
TUG TUCANA CORPORATION,
                    Defendants.

DEFENDANT, TUG TUCANA CORPORATION'S,
OPPOSITION TO PLAINTIFF'S MOTION TO INCREASE MAINTENANCE
AND CURE AND REQUEST FOR EXPEDITED HEARING

Now comes the defendant, Tug Tucana Corporation, in the
above entitled action, by and through its undersigned
counsel, and files its Opposition to plaintiff's Motion to
Increase Maintenance and Cure and Request for Expedited
Hearing.

As grounds in support of its Opposition, the defendant
submits the following for this Honorable Court's
consideration.

**PREAMBLE**

On April 13, 2003, the TUG TUCANA was attending to
barges in Beverly Harbor as a part of the Algonquin HubLine
Project.[1]   The plaintiff had been working aboard the TUG

---

[1] The Algonquin HubLine Project includes 30 miles of 24-inch, offshore
pipe from Beverly to Weymouth, Mass., and approximately five miles of 16-
inch, offshore lateral pipe to Deer Island, Mass.

TUCANA for approximately three [3] days as a deckhand.  The

plaintiff was not a member of any maritime union.  *See*

**Exhibit 'A'.**  The plaintiff sustained a Lisfranc fracture of

his right mid-foot while serving onboard the TUG TUCANA.

On December 18, 2003, the plaintiff filed a three count

Complaint alleging Jones Act Negligence, Unseaworthiness,

and for payment of Maintenance and Cure.   In January 2006,

the plaintiff's liability claims were tried to a jury.  The

verdict was for the defendant.  The plaintiff's claim for

payment of Maintenance and Cure remains for this Court's

determination.

On August 17, 2006, the plaintiff filed a ***Motion to***

***Increase Maintenance and Cure and Request for Expedited***

***Hearing*** by the Court.  The plaintiff's Motion inconsistently

seeks three [3] different daily Maintenance rates of $65.45,

$57.94, and $50.37 per day.[2]  Accordingly, the plaintiff is

seeking an increase of approximately $35.00 to $50.00 per

day over the paid rate of $15.00 per day.  He also seeks

payment, under Cure, for his daughter's invoice for un-

prescribed home services provided for him and the assisted

care of his elderly mother.  These invoices amount to

$11,470.00.

In support of his Motion to Increase Maintenance and

---

[2] See pages 2 and 5 of the plaintiff's Motion to Increase Maintenance and
Cure.

3

Cure, the plaintiff submitted the following undocumented

expenses in his computations.[3]

| TYPE | Monthly Expense | Daily Expense |
|---|---|---|
| Rent | $962.00 | |
| Utilities | $150.00 | $5.00 |
| Food | $400.00 | |
| Gas | $120.00 | |
| Car Insurance | $100.00 | |
| Total | $1,732.00 | $57.73 |

The defendant opposes this submission and offers the

Collective Bargaining Agreement with the International Union

of Operating Engineers AFL-CIO -Local 25 Marine Division

dated January 20, 2003.  The Collective Bargaining Agreement

establishes the daily rate of Maintenance at $20.00 for this

project.  Accordingly, the plaintiff, if entitled to an

increase, is only entitled to an increase of $5.00 above the

previously paid daily rate of $15.00.  To date, the

defendant has paid the plaintiff $23,900.00 under its

Maintenance obligation.

If, in the alternative, this Honorable Court finds that

the Collective Bargaining Agreement is not controlling, the

maximum daily rate of Maintenance should not exceed $25.20

based upon the recoverable expenses in plaintiff's

undocumented submission.

---

[3] The table assumes thirty [30] days and four [4] weeks per calendar
month.

4

## BACKGROUND

**MAINTENANCE CLAIM**

On October 30, 2006, the plaintiff's deposition was reopened to examine the foundation of his computation of daily expenses.

The plaintiff shares an apartment with his mother in Manchester, Massachusetts.  *See* plaintiff's deposition attached as **Exhibit 'B'.**  His mother's monthly income is from social security benefits in the amount of $1,201.00.  *See* **Exhibit 'B'.**  The plaintiff claims that his mother pays one-half of the monthly rent, which includes heat and hot water.  *See* **Exhibit 'B'.**  The plaintiff's monthly income is from Social Security Disability at a rate of $735.00 per month.  *See* **Exhibit 'B'.**

The plaintiff has failed to provide sufficient support for his claim that he incurred a cost of $5.00 per day for his utilities.  The plaintiff's testimony reveals that he did not review any billing statements to support his claim nor did he submit any invoices documenting that sum to the alleged cost of $5.00 per day.  *See* **Exhibit 'B'.**  The plaintiff simply "tried to estimate" his expense.  The plaintiff believes his estimation includes improper considerations for his cable television and telephone charges.  Accordingly, the plaintiff has failed to provide

sufficient support for his claim that he incurred a cost of

$5.00 per day.

The plaintiff testified that he did not seek physical

therapy on a continuous basis.  *See copies of pages 53-55* of

the plaintiff's deposition attached herewith as **Exhibit 'C'.**

The plaintiff further testified that he drives from

Manchester, Massachusetts to Seabrook, New Hampshire,

Lincoln, New Hampshire and Stratham, New Hampshire to visit

his daughters once or twice per week.  *See* **Exhibit 'C'.**  In

addition, the plaintiff attended physical therapy sessions

in Beverly, Massachusetts and Manchester, Massachusetts at a

rate of two to three [2-3] times per week for only four to

six [4-6] weeks.[4]  The physical therapy appointments occurred

for several weeks after the plaintiff's surgeries and the

facilities were located within ten [10] miles of his home in

Manchester, Massachusetts.  *See* **Exhibit 'C'.**  The plaintiff

further testified that he could not explain the basis for

his claim that he incurred a cost of $25.00 to $30.00 per

week for gasoline and automobile insurance expenses related

to traveling to his physical therapy appointments.  *See*

---

[4] According to the medical records exchanged between the parties, the plaintiff went to physical therapy in Beverly, Massachusetts for twenty-seven [27] visits from August 2003 until November 2003.   In 2004, he went to physical therapy for six [6] weeks from April to May 2004.  Upon information and belief, he did not attend physical therapy sessions in 2005.  In August 2006, he attended several visits at Cape Ann Orthopedic and Sports Physical Therapy in Manchester, Massachusetts.

**Exhibit 'C'.**  His claims are based primarily upon his own recollection without reference to or submission of supporting documentation.[5]   Accordingly, the plaintiff has failed to provide sufficient support for his claim that he incurred a cost of $25.00 to $30.00 per week for gasoline and automobile insurance expenses to attend his physical therapy appointments between April 13, 2003 and October 4, 2006.

The plaintiff has presented no documentation, although requested, for rent, food, and gasoline expenses.

On or about October 18, 2006, defense counsel obtained a copy of the Collective Bargaining Agreement applicable to the pipe laying project performed in Beverly Harbor.  A copy of the Collective Bargaining Agreement is attached as **Exhibit 'E'.**  Under *Section 48* of the Agreement entitled "*Maintenance and Cure*", the daily rate of Maintenance is set at $20.00 per day.

The plaintiff alleged that he remained disabled from any gainful employment because he cannot remain standing on his right foot for long periods of time.  *See copies of pages 12-14* of the plaintiff's deposition attached as

---

[5] On November 29, 2006, defense counsel received a facsimile from plaintiff's counsel of several documents that purportedly support the plaintiff's claims.  A review of these documents reveals that they are either unrelated to the claims or fail to sum to the plaintiff's alleged figures.  Copies of these documents are enclosed herewith as **Exhibit 'D'.**

**Exhibit 'F'.**  Upon further examination, the plaintiff

conceded that he could perform sedentary work because

recently he applied for a position as a security guard at

Minuteman Security in Lynnfield, MA.  *See* **Exhibit 'F'.**  The

plaintiff claims that he sought this position because it

permitted him to sit in his vehicle during overnight hours,

but he has yet to work for Minuteman Security. *See* **Exhibit**

**'F'.**

During the past several months, the plaintiff worked

for a friend where he painted shutters and banisters at

various homes.  *See copies of pages 10, 14-17* of the

plaintiff's deposition enclosed herewith as **Exhibit 'G'.**  He

was able to paint because he could work at his own pace

without much strain on his right foot.  *See* **Exhibit 'G'.**  He

also recalled assisting another friend with her catering

business where he helped her prepare meals.  *See* **Exhibit**

**'G'.**  The plaintiff stated that it was cost prohibitive at

this point in his life to renew his barbering license.  *See*

**Exhibit 'G'.**  The plaintiff also recalled that he once drove

a cab in Beverly, Massachusetts, but he insisted that his

search for this type of work has been unsuccessful.  *See*

**Exhibit 'G'.**  The plaintiff further testified that he no

longer works as lobsterman, but he receives a monthly income

8

of approximately $600.00 to $900.00 for the sale of his

vessel and his Massachusetts lobstering permit.[6]

**CURE CLAIM**

On October 4, 2006, Dr. Hyman Glick conducted an

independent medical examination of the plaintiff's right

foot.  Dr. Glick concluded that the plaintiff is at a

"*medical end result and his present condition is unlikely to*

*change or benefit from further surgery*."  Dr. Glick further

opined that the plaintiff is not totally disabled and he is

capable of light work.   A copy of Dr. Glick's medical

examination report is enclosed herewith as **Exhibit 'J'.**  The

plaintiff has not provided any opposing expert medical

opinion to refute Dr. Glick's opinion.

The plaintiff testified that his daughter, Ms. Laurie

Carr, is a certified nurse's aide who works for a facility

located in Beverly, Massachusetts. *See copies of pages 46-*

*51, 60-61* of the plaintiff's deposition attached herewith as

**Exhibit 'K'.**   Ms. Carr assisted the plaintiff during his

---

[6] The plaintiff is leasing to sell his lobstering vessel, F/V CAPT. YAK, to his stepdaughter's husband.  The agreement is an oral contract whereby the vessel's selling price of $40,000.00 is paid off monthly.  The plaintiff receives either $300.00 per month during the slow season [January - June] or $600.00 per month during the peak season [July – December].  To date, the plaintiff has collected approximately $4,900.00 under this agreement. *See copies of pages 40-43* of the plaintiff's deposition enclosed herewith as **Exhibit 'H'.**

The plaintiff also made an oral agreement to sell his Massachusetts Lobster Fishing Permit.  The plaintiff received $6,000.00 upfront, and the purchaser agreed to pay $300.00 per month until the balance is satisfied. *See copies of pages 44-45* of the plaintiff's deposition enclosed herewith as **Exhibit 'I'.**

recovery from surgeries from June 2005 until October 2005

and then again from March 2006 to April 2006. *See* **Exhibit**

**'K'.** The plaintiff testified that he believed Ms. Carr's

services were recoverable from the vessel owner and

therefore, he expects to recoup the amount of her invoices.

*See* **Exhibit 'K'.** The plaintiff also testified that Ms.

Carr assisted with the care of his elderly mother. *See*

**Exhibit 'K'.** *No physician has prescribed the need for Ms.*

*Carr's services.* *See* **Exhibit 'K'.**

**ARGUMENT**

"From time immemorial, the law of the sea has required

shipowners to ensure the maintenance and cure of seamen who

fall ill or become injured while in service of the ship."

***Ferrara v. A. & V. Fishing, Inc.***, 99 F.3d 449, 454 (1st Cir.

1996) *citing to* ***LeBlanc v. B.G.T. Corp.,*** 992 F.2d 394, 396

(1st Cir.1993) (citing *Benedict on Admiralty,* §§ 41-42 (6th

ed. 1993)); *see also* ***Aguilar v. Standard Oil Co. of N.J.,***

318 U.S. 724, 730-33 (1943). Maintenance and Cure refers

to "the provision of, or payment for, food and lodging as

well as any necessary health-care expenses incurred during

the period of recovery from an injury or malady." ***Ferrara*** at

454 *citing to* ***LeBlanc*** at 397. For the period from April 13,

2003 until October 4, 2006 [1270 days], the defendant paid

the plaintiff $23,900.00 in Maintenance, which equates to

$18.82 per day.[7]  To date, the defendant has paid all

"necessary health-care expenses" submitted by the

plaintiff's counsel through October 4, 2006, which is the

date that the plaintiff reached a medical end result.  A

copy of Dr. Glick's medical examination report is enclosed

as **Exhibit 'J'.**  Accordingly, the defendant has satisfied

its Maintenance and Cure obligation to the plaintiff.

**MAINTENANCE**

In the absence of a collective bargaining agreement, a

seaman is entitled to Maintenance for his actual reasonable

expenses of obtaining room and board ashore, equivalent to

the quality received aboard the vessel. *McWilliams v.*

*Texaco, Inc.,* 781 F.2d 514 (5th Cir. 1986).  Maintenance is

for the seaman's own personal expenses, not for the support

of his family.  *Macedo v. F/V Paul & Michelle*, 868 F.2d 519,

522 (1st Cir. 1989).  In *Gillikin v. United States,* 764 F.

Supp.270 (E.D. N. Y. 1991), the Court apportioned expenses

between the seaman [50%] and his spouse [50%].

The First Circuit and the majority of Federal Circuits

support the rule that a plaintiff is entitled to a rate of

Maintenance established in a collective bargaining

---

[7] The defendant paid the plaintiff Maintenance at a rate of $15.00 per
day through October 26, 2006 while the defendant waited to receive a copy
of Dr. Glick's medical examination report. Accordingly, the payments
beyond October 4, 2006 increase the actual daily rate from $15.00 to
$18.82.

agreement.  *See* **Macedo v. F/V Paul & Michelle**, 868 F.2d 519, 522 (1st Cir. 1989); *see also* **Marcic v. Reinauer Transp. Companies**, 397 F.3d 120, 131 (2nd Cir. 2005) *citing to* **Ammar v. U.S.**, 342 F.3d 133, 146 (2nd Cir. 2003).  The plaintiff was not a member of Local 25 Marine Division, but he was working on the project covered by the Collective Bargaining Agreement.  *See* **Exhibit 'A'** *and* **Exhibit 'E'**.  Where a daily Maintenance rate is fixed under a collective bargaining agreement, it should be accepted by a reviewing court as reasonable absent evidence that the contract as a whole is unfair or that the bargaining unit did not adequately represent the plaintiff.  *See* **Frederick v. Kirby Tankships, Inc.**, 205 F.3d 1277, 1291 (11th Cir. 2000).

In January 2003, the defendant entered into the Collective Bargaining Agreement with Local 25 Marine Division.  *See* **Exhibit 'E'**.  Its terms and conditions reasonably address each aspect of the pipe laying project, including the daily rate of Maintenance of $20.00 established under Section 48.  Representatives of Local 25 Marine Division agreed to the Collective Bargaining Agreement's terms and conditions as evidenced by their signatures dated January 20, 2003.  Accordingly, this Court should follow the First Circuit precedent by accepting the

12

Collective Bargaining Agreement's Maintenance rate at $20.00

per day.

For the period between April 13, 2003 and October 4,

2006 [1270 days], the total Maintenance benefit due to the

plaintiff is $25,400.00.  The difference between $25,400.00

and the amount paid [$23,900.00] is $1,500.00.

In the alternative and if this Court does not favor the

controlling Collective Bargaining Agreement, only the

plaintiff is entitled to receive Maintenance benefits.  *See*

***Macedo*** at 522*; See also* ***Ferrara*** at 454*.*  Any monthly expense

attributed to the plaintiff's mother residing in their

apartment in Manchester, Massachusetts should not be

included in the calculation of the daily rate of

Maintenance.[8]   The plaintiff testified that his mother does

not purchase her own food.  *See* **Exhibit 'B'.**  The plaintiff

testified that he did not review or submit any invoices or

other documentation in support of his own monthly expenses.

*See* **Exhibit 'B'.**   The defendant submits that the

information provided by the plaintiff is insufficient for

this Honorable Court to calculate his reasonable monthly

---

[8] The plaintiff's submitted monthly expenses total some $1,732.00.  Since
the plaintiff and his mother collect approximately $1,936.00 per month in
social security benefits and he receives a minimum of $600.00 per month
from the sale of his lobster vessel and permits, it appears that they
receive sufficient income to cover their monthly expenses outside of the
plaintiff's receipt of Maintenance.

13

expenses.   Since the plaintiff's mother lives with him, it
is more than reasonable and generous to halve his alleged
monthly expenses for rent, food, and utilities to calculate
a daily rate of Maintenance.

Further, the plaintiff's expenses for gasoline,
automobile insurance, cable television, and telephone
service should not be considered under the vessel owner's
Maintenance obligation.   Expenses for gasoline, automobile
insurance, cable television and telephone service were not
provided to the plaintiff or other crewmembers while they
were in the service of the TUG TUCANA.   Accordingly, these
expenses are not recoverable under the vessel owner's
Maintenance obligation.

This Honorable Court should find, at most, that the
plaintiff's daily rate of Maintenance is based upon the
following table of expenses.

| TYPE | Monthly Expense | Daily Expense |
|------|-----------------|---------------|
| Rent | $481.00 | |
| Utilities | $75.00 | |
| Food | $200.00 | |
| Gas | $0.00 | $0.00 |
| Car Insurance | $0.00 | $0.00 |
| Total | $756.00 | $25.20 |

Utilizing these figures, the maximum daily rate of
Maintenance equates to $25.20 for a total of $32,004.00.

This figure is the most generous amount that this Honorable Court should consider based upon the minimal information submitted by the plaintiff.  The difference between $32,004.00 and the amount paid [$23,900.00] is $8,104.00.

**CURE**

The plaintiff testified that he did not seek physical therapy on a continuous basis and therefore, his use of his automobile and gasoline was not for the sole purpose of "necessary health-care expenses" or Cure. *See **Ferrara*** at 454.

The plaintiff testified that he drives several hundred miles to New Hampshire to visit his daughters once or twice per week.  In addition, he attended physical therapy in Beverly, Massachusetts and Manchester, Massachusetts.  These alleged twenty [20] mile roundtrips trips from his home to the physical therapy appointments cannot conceivably equate to $25-30.00 in gasoline consumption and automobile insurance expense per week.

The plaintiff has failed to provide any substantive support for the reimbursement of his gasoline consumption and automobile insurance for trips to and from physical therapy under the defendant's Cure obligation.  Accordingly, this Honorable Court *should not* consider these unsubstantiated expenses in its consideration of the

defendant's Cure obligation.

The plaintiff is also seeking payment of invoices submitted by his daughter, Ms. Laurie Carr, a certified nurse's aide living in Beverly, Massachusetts. The plaintiff recently submitted invoices totaling $3,930.00 for services rendered from March 13, 2006 to April 16, 2006. During his deposition, he testified that he is also seeking payment of invoices covering a period from June 2005 until October 2005. The invoices total $11,470.00. The defendant is only responsible under its Cure obligation for "any <u>necessary</u> health-care expenses <u>incurred</u> during the period of recovery from an injury or malady." *See* **Ferrara** at 454. {Underlining our emphasis.} The defendant submits that it is only responsible for charges pertaining to transportation to the plaintiff's treating orthopedist in Boston. The defendant paid the plaintiff $430.00 for the invoices submitted for the period of June 2005 until October 2005 on or about October 17, 2005. For the invoices submitted for the period of March 2006 to April 2006, there is only one entry pertaining to transportation to Boston on March 21, 2006. Consequently, the defendant is willing to pay $80.00 for Ms. Carr's services provided on March 21, 2006.

16

The plaintiff testified that he did not pay Ms. Carr for her services and therefore, he did not incur any further expense for Ms. Carr's services. *See* **Exhibit 'K'.** Despite the plaintiff's admission that he did not incur these expenses, the defendant paid $430.00 in October 2005 and is willing to pay the additional $80.00. More importantly, *the plaintiff's treating physician[s] never proscribed a need for Ms. Carr's services.* Further, Ms. Carr's identity was not provided by the plaintiff or his counsel until he was deposed on October 30, 2006. Accordingly, the defendant is not responsible under its Cure obligation for the remaining balance, $10,960.00, of Ms. Carr's invoices.

## CONCLUSION

The Collective Bargaining Agreement between the defendant and Local 25 Marine Division was executed before the plaintiff worked on the TUG TUCANA. Its terms and conditions are fair and reasonable and this Honorable Court should establish the daily rate of Maintenance of $20.00 as detailed under Section 48 therein. By establishing the daily rate of Maintenance at $20.00, the plaintiff is entitled to additional Maintenance payments totaling $1,500.00.

If this Honorable Court finds that the Collective Bargaining Agreement does not establish the daily rate of

Maintenance, an examination of the plaintiff's reasonable

expenses for the provision of or payment for, food and

lodging must be conducted.  Given the scant information

submitted to support the plaintiff's expenses, it is

unreasonable for this Honorable Court to consider more than

one-half [50%] of the plaintiff's alleged monthly expenses

for rent, food and utilities in calculating a daily rate of

Maintenance.  This Honorable Court should not give any

consideration to the plaintiff's claims for reimbursement of

gasoline, automobile insurance, cable television and

telephone service expenses because they do not fall under

the vessel owner's obligation.  This Honorable Court should

find at most that the plaintiff's daily rate of Maintenance

would equate to $25.20 for a total payment of $32,004.00.

Finally, this Honorable Court should find that the

defendant is willing to pay the plaintiff an additional

$80.00 for the services rendered by his daughter, Ms. Laurie

Carr.  The majority of the services detailed in Ms. Carr's

invoices falls outside the defendant's Cure obligation

because they are not necessary health-care expenses incurred

during the period of the plaintiff's recovery.

**WHEREFORE**, the defendant prays that this Honorable

Court, for the reasons stated herein, deny plaintiff's

Motion to Increase Maintenance and Cure at the level that he

is seeking and issue an Order establishing the daily rate of

Maintenance at $20.00 pursuant to Section 48 of the

Collective Bargaining Agreement.

In the alternative, this Honorable Court should deny

plaintiff's Motion to Increase Maintenance and Cure at the

level that he is seeking and issue an Order establishing a

daily rate of Maintenance not to exceed $25.20 since he

lives with his mother and he has failed to provide

sufficient documentation and information to support his

alleged monthly expenses.

This Honorable Court should deny the payment of

invoices submitted by the plaintiff for the services

allegedly provided by his daughter, Ms. Laurie Carr, and

only require the defendant to pay $80.00 for Ms. Carr's

services provided on March 21, 2006.

Finally, this Honorable Court should enter its Final

Order and terminate this civil action with no further action

to be taken.

19

                                        Respectfully Submitted,
                                        **DEFENDANT**
                                        **CLINTON & MUZYKA, P.C.,**
                                        "/s/ Terence G. Kenneally"
                                        **Thomas J. Muzyka**
                                        **BBO NO. 365540**
                                        **Terence G. Kenneally**
                                        **BBO NO. 642124**
                                        One Washington Mall
                                        Suite 1400
                                        Boston, MA 02108
                                        617-723-9165


        Dated: November 30, 2006